(908 P.2d 625)
No. 73,336

In the Matter of the Marriage of LOIS J. BRANE, *Appellee,* and EUGENE P. BRANE, *Appellant.*

—

Opinion filed December 15, 1995.

*Keith D. Richey,* of Wichita, for appellant.

*Charles F. Harris,* of Kaplan, McMillan and Harris, of Wichita, for appellee.

Before GREEN, P.J., PIERRON, J., and RICHARD W. WAHL, District Judge Retired, assigned.

GREEN, J.: The sole issue presented in this appeal by the husband is whether the anti-assignment statute of the Social Security Act prohibits the trial court from considering his social security income when dividing the marital estate in a divorce action. The husband's arguments would require us to abandon the position we took in *In re Marriage of Knipp,* 15 Kan. App. 2d 494, 809 P.2d 562 (1991), *rev. denied* 248 Kan. 995 (1991), and *Gronquist v. Gronquist,* 7 Kan. App. 2d 583, 644 P.2d 1365 (1982). In those cases, we stated that a trial court could consider the value of social security benefits and military retirement in dividing the marital estate. Because we decline to abandon the rationale adopted in *Gronquist* and *Knipp,* we affirm the judgment of the trial court.

In dividing property upon divorce, Kansas trial courts are required to consider the following factors:

"the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 60-1610(b)(1).

Because we are asked to determine whether the trial court violated the anti-assignment clause of the Social Security Act in considering the unequal social security income of the parties, this is a question of law. Consequently, our standard of review is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1991).

According to Supreme Court Rule 3.05 (1995 Kan. Ct. R. Annot. 21), the parties stipulated to the following facts:

1. At the time of trial, the parties had been married for 43 years and their two children had reached the age of majority. With few exceptions, the parties agreed on an equal division of their personal property and investments. The wife was not requesting spousal maintenance.

2. The husband was 65 years of age and the wife was 62 years of age. Both were receiving social security payments on a monthly basis. The husband received $910 each month (before Medicare premium deduction of $41.10) and the wife was receiving $437 per month. In addition, the husband was receiving a retirement pension of $1,924 per month from The Hartford Fire Insurance Company, his former employer, which was earned during the marriage. The wife has no retirement benefits other than social security.

3. The husband requested the trial court to equally divide the future payments from The Hartford Fire Insurance pension between himself and his wife but asserted that the court could not consider the social security payments each party received based upon 42 U.S.C. § 407(a) (1988) which does not permit any transfer or assignment of benefits. This is commonly referred to as the anti-assignment section of the Social Security Act.

4. The wife agreed that the court could not divide the husband's social security benefits, but asked the court to grant her a larger portion of The Hartford Fire Insurance pension in order to equalize the disparity in the social security benefits.

5. Relying upon *Olson v. Olson*, 445 N.W. 2d 1 (N.D. 1989), and the cases cited therein, the trial court initially agreed with the husband at the conclusion of the trial. After considering the wife's written Memorandum of Law and the husband's reply brief, the court later reversed itself. The court ruled that *In re Knipp*, 15 Kan. App. 2d 494, was controlling and that the wife would receive $1,198.43 per month and the husband would receive $725.43 per month from The Hartford Fire Insurance Company pension in order to equalize the larger amount that the husband was receiving in his monthly social security benefits in excess of the amount received by the wife.

6. The material facts are not in dispute. The issue stated below may be decided as a matter of law.

The husband contends that the anti-assignment clause of the Social Security Act, 42 U.S.C. § 407(a), prohibits the trial court from considering his social security income. The applicable portion of the Act states:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. "

Additionally, the husband argues that his position is buttressed by the North Dakota Supreme Court's decision of *Olson v. Olson*, 445 N.W.2d 1. In *Olson*, the court determined that any distribution or consideration of social security benefits in dividing marital property was in conflict with the federal social security plan and violative of the Supremacy Clause of the United States Constitution. *Olson* relied heavily on the United States Supreme Court's decision of *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979).

In *Hisquierdo*, the Court held that California could not treat benefits to be received by a husband after divorce under the Railroad Retirement Act as community property, although they had been earned during the marriage. The Court held that to permit a

state to classify such benefits as community property, subject to the equal interest of each spouse, would conflict sharply with the federal purpose of securing the pay as a benefit solely for the individual retiree. The Court further found that an offsetting award of other property would amount to a prohibited anticipation of the federal funds. Significantly, the Court stated that under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the federal benefits scheme preempted state community property law.

The holding of *Hisquierdo* was later applied to future military retirement pay by the United States Supreme Court in *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). Although *McCarty* has since been abrogated by an act of Congress in 1983, the *McCarty* court held that federal law precluded the spouse of a military retiree from sharing in the retiree's military pension as part of a community property settlement. The Court expressly stated that federal law, which it interpreted as prohibiting such a division, prevails over conflicting state laws, based upon the Constitution's Supremacy Clause. Although the applicability of *Hisquierdo* and *McCarty* to community property states was clear, the effect of those decisions upon equitable division states was much less certain.

For example, those states not under community property law are divided in their interpretation and application of *Hisquierdo* and *McCarty*. However, the majority of courts that have considered this matter have concluded that the preemption holdings in *Hisquierdo* and *McCarty* do not apply in equitable distribution states. And those courts have held that the trial court may at least consider the federal benefits that a spouse will receive in the future when dividing the remaining property. Reppy, Valuation and Distribution of Marital Property § 10.03 (1987); see Turner, Equitable Distribution of Property § 6.06 (2d ed. 1994) (Although most states consider social security benefits indivisible pursuant to federal law, state courts may consider social security benefits as one relevant factor in dividing other marital assets.).

Cases supporting a trial court's consideration of federal benefits under an equitable division of property theory include: *In re marriage of Hapaniewski*, 107 Ill. App. 3d 848, 438 N.E.2d 466 (1982);

*In re Marriage of Meyer*, 103 Ill. App. 3d 44, 430 N.E.2d 610 (1981); *Pongonis v. Pongonis*, 606 A.2d 1055 (Me. 1992); *Puckett v. Puckett*, 632 S.W.2d 83 (Mo. App. 1982); *In re Marriage of Karr*, 192 Mont. 388, 628 P.2d 267 (1981), *cert. denied* 455 U.S. 1016 (1982); *Smedley and Smedley*, 60 Or. App. 249, 653 P.2d 267 (1982); *Mattern v. Mattern*, 624 S.W.2d 400 (Tex. Civ. App. 1981); *In re Marriage of Dessauer*, 97 Wash. 2d 831, 650 P.2d 1099 (1982); *In re Marriage of Roark*, 34 Wash. App. 252, 659 P.2d 1133 (1983). On the other hand, cases prohibiting the trial court's consideration of federal benefits under an equitable division of property theory include: *Olson v. Olson*, 445 N.W.2d 1; *Swan and Swan*, 301 Or. 167, 720 P.2d 747 (1986) (holding that *Hisquierdo* and *McCarty* prohibit consideration of federal benefits in equitable distribution of property). See also *In re Marriage of Hawkins*, 160 Ill. App. 3d 71, 513 N.E.2d 143 (1987); *In re Marriage of Smith*, 33 Wash. App. 147, 652 P.2d 391 (1982) (holding that offsets or reimbursements for federal benefits constitute interference with statutory scheme despite equitable distribution statutes).

In discussing the impact that *McCarty* had upon property divisions in Kansas, we stated that "unlike community property states, Kansas law does not require an equal split of all property acquired during the marriage but, rather, gives the court discretion to consider all of the property, regardless of when acquired, to arrive at a just and reasonable division. K.S.A. 1981 Supp. 60-1610(d); *Smith v. Smith*, 5 Kan. App. 2d 117, 120, 612 P.2d 1257 (1980)." *Gronquist*, 7 Kan. App. 2d at 585. We further stated:

"[T]here is a significant theoretical difference between Kansas law and community property law since in Kansas the court has discretion to award marital property entirely to one party so long as the overall division is fair. Property acquired during the marriage may continue to be identified as that of one party although the other party to the divorce will have the right to some offsetting value accomplished either within the property division or by the award of alimony.

"The import of the difference in Kansas law from community property law is that a property division here may take military retirement pay into account without automatically conflicting with the federal goal of securing control over retired pay to the retiree alone." 7 Kan. App. 2d at 585.

We concluded that actually dividing military retirement pay was prohibited in Kansas as well as in community property states. But

.we stated that *McCarty* did not "prohibit the consideration of the retirement pay as income to be considered in awarding alimony or to consider the retired pay as property which may not be alienated from the retiree but the value of which may be considered in dividing the remaining property." 7 Kan. App. 2d at 585. Although *Gronquist* was later superseded by federal and state statutes allowing the division of military pay, its reasoning is still valid.

This view was reiterated in *In re Marriage of Knipp*. There, we held that the trial court had erred in setting aside a portion of a husband's lump sum social security benefits to his wife in a property division order. But we stated that "the anti-assignment statute does not prohibit a court from considering the value of a lump sum social security disability award in dividing the remaining marital property. [Citation omitted.]" 15 Kan. App. 2d at 495-96. In *Grant v. Grant*, 9 Kan. App. 2d 671, 674-75, 685 P.2d 327 (1984), this court found that military income did not have a present determinable value but noted with approval the trial court's consideration of the military retirement pay in its division of property; see also *In re Marriage of Powell*, 13 Kan. App. 2d 174, 181, 766 P.2d 827 (1988), *rev. denied* 244 Kan. 737 (1989) (no abuse of discretion in awarding maintenance to wife, where husband's assets and income from social security disability sufficient to pay his basic needs and provide a sizeable reserve).

Finally, the husband's position fails to take into account that Kansas divorce law, unlike some equitable distribution states, does not include a presumption that property will be divided equally upon dissolution of marriage. See *LaRue v. LaRue*, 216 Kan. 242, 250, 531 P.2d 84 (1975). Although the trial court's judgment resulted in an equitable division of the marital property, it was within the trial court's discretion to award the wife the entire Hartford pension. Consequently, we find the husband's argument is not persuasive.

Affirmed.