[No. 4207-0-II. Division Two. October 15, 1982.]

*In the Matter of the Marriage of* MARIAN S. SMITH, *Respondent, and* GERALD W. SMITH, *Appellant.*

148

*Robert Briggs,* for appellant.

*H. Edward Haarmann,* for respondent.

PETRICH, J.—The husband, a retired military officer, appeals from that portion of a marital dissolution decree awarding properties to the respective parties. The issue presented is whether the court may offset the award of a nondisability military pension to the military retiree by awarding community property of comparable or equal value to the other spouse. In light of *McCarty v. McCarty,* 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), and *In re Marriage of Dessauer,* 97 Wn.2d 831, 650 P.2d 1099 (1982), we must answer in the negative and, thus, reverse the order below.

Gerald Smith entered the Air Force in 1955 and married Marian Smith on June 10, 1956. After 20 years of service, the husband retired as a Lieutenant Colonel in 1975, at which time he began receiving his full military pension. In January of 1979, Marian Smith filed a petition for dissolution; a trial on this action took place that June. In his trial brief and in argument before the court, the husband argued that on the basis of *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979), his military retirement pension was his separate property, made exempt from the reach of state community property law by the federal supremacy clause. Although he admitted *Hisquierdo* dealt specifically with federal railroad retirement benefits, he contended that the same result obtained with military retirement pensions.

In his brief he proposed a disposition of community

property assets allocating $178,280.17 to his wife and $163,696.17 for himself. He also suggested that his military pension be awarded to himself in exchange for other items of community property awarded to his wife. During argument at trial, the wife requested a percentage of the pension. The husband said he would prefer to retain the full pension and offset any share his wife may have through other assets.

The court characterized all the assets, including the military pension, as community property. The details of the mathematical computation in dividing the property are unnecessary to this opinion. It is clear, however, that the court awarded to the husband the entire military pension, which it valued at $165,000, and that it offset this by awarding to the wife other property of equal value. The remaining properties were divided not on an equal value basis, but reasonably close considering the nature and quality of the items divided.

From this order the husband appeals.[1] We first note that although some statements of the husband to the trial court suggest an invitation to offset his military pension, other argument sufficiently apprised the trial court of his claim that the supremacy clause prohibits the application of state community property law to a military retirement pension. He repeatedly argued that, on the basis of *Hisquierdo,* the pension was his wholly separate property. Moreover, in its oral opinion, the court indicated its awareness that a recent case, *Cose v. Cose,* 592 P.2d 1230 (Alaska 1979), had interpreted *Hisquierdo* to mean that military pensions were not to come under the sway of a state's domestic relations law. The husband, therefore, did not waive his right to appeal.

The question presented by *McCarty* was whether, upon the dissolution of a marriage, federal law precludes a state court from dividing a nondisability military pension pursuant to state community property laws. After extensive

---

[1]Subsequent to original appellate argument, the United States Supreme Court announced the *McCarty* decision. Reargument was then requested by this court.

review of the congressional intent underlying the statutes providing for military retirement pay, it concluded not only that "there is a conflict between the terms of the federal retirement statutes and the community property right asserted by appellee here . . ." but that "the application of community property principles to military retired pay threatens grave harm to 'clear and substantial' federal interests", thus requiring nonrecognition of community property principles under the supremacy clause. *McCarty v. McCarty,* 453 U.S. at 232.

At this point we make two closely related observations. First, *McCarty*'s holding was not dependent upon characterizing military retirement benefits as either property, in the form of deferred compensation, or current compensation for reduced, but currently rendered services. *McCarty v. McCarty,* 453 U.S. at 222–23. Rather, the Court viewed these benefits as the retiree's "personal entitlement" not subject to partition or diminution according to community property law. Washington has previously characterized military pensions as deferred compensation, thereby divisible under community property law. *Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975). Thus, although *McCarty* does not now permit military pensions to be so divided, we are still bound by the characterization of military pensions as deferred compensation.

Second, for purposes of following *McCarty,* it is immaterial whether or not the pension is characterized as separate property.[2] The only real issue is whether treatment of the pension in a property division conflicts with and sufficiently

---

[2]Indeed, *McCarty* is applicable to many common law property states where divorce courts are empowered to distribute property upon divorce no matter how title is held. Foster & Freed, *From a Survey of Matrimonial Laws in the United States: Distribution of Property Upon Dissolution,* 3 Comm'ty Prop. J. 231 (1976). Thus, at least one common law state has already applied *McCarty* to its own distribution scheme. *See Webber v. Webber,* 308 N.W.2d 548 (N.D. 1981). In sum, military retirement pay is not subject to division or equitable distribution under community property or other variations of marital property laws. Kornfeld, *Supreme Court Majority Shoots Down Community Property Division of Military Retired Pay,* 8 Comm'ty Prop. J. 187, 194 (1981).

frustrates or injures federal objectives. For example, in this state, community property as well as separate property is brought before the court for property divisions. And, in an appropriate case, the court may award the separate property of one spouse to the other. *See, e.g., Moore v. Moore,* 9 Wn. App. 951, 515 P.2d 1309 (1973). Obviously, even if a military pension was characterized as separate property, application of such Washington law would nevertheless be prohibited by *McCarty.* Thus, the application of *McCarty* to a dissolution proceeding dividing the spouses' property will not be affected by the pension's characterization as either separate or community property.

■ We turn, now, to the issue before us. *McCarty's* only mention of offsetting appears in footnote 22.[3] While the majority's analysis may be subject to criticism,[4] its pronouncement against offsetting is clear. Indeed, although our Supreme Court has not been squarely faced with the issue of whether a court could offset the award of a military pension with other properties, it affirmed *McCarty's* prohibition of the same. "Neither may [a court] value the pension and offset property against that value." *In re Marriage of Dessauer,* 97 Wn.2d at 839.

We therefore conclude that the court below erred when it

---

[3]*McCarty v. McCarty,* 453 U.S. at 228 n.22 states:

"In addition, an Army enlisted man may not assign his pay. 37 U. S. C. § 701 (c). While an Army officer may transfer or assign his pay account '[u]nder regulations prescribed by the Secretary of the Army,' he may do so only when the account is 'due and payable.' § 701 (a). This limitation would appear to serve the same purpose as the prohibition against 'anticipation' discussed in *Hisquierdo,* 439 U. S., at 588–589. Cf. *Smith* v. *Commanding Officer, Air Force Accounting and Finance Center,* 555 F. 2d 234, 235 (CA9 1977). But even if there were no explicit prohibition against 'anticipation' here, it is clear that the injunction against attachment is not to be circumvented by the simple expedient of an offsetting award. See *Hisquierdo,* 439 U. S., at 588. Cf. *Free* v. *Bland,* 369 U. S. 663, 669 [8 L. Ed. 2d 180, 82 S. Ct. 1089] (1962)."

[4]*See* Note, *Federal Law Preempts State Treatment of Military Retirement Benefits as Community Property: McCarty v. McCarty, 101 S. Ct. 2728 (1981),* 13 Tex. Tech. L. Rev. 212, 224–27 (1982); Comment, *McCarty v. McCarty and Military Retired Pay: Avoiding the Test for Federal Preemption of State Community Property Law and the Problem of Unconstitutional Taking,* 16 U.S.F. L. Rev. 377, 386–88 (1982).

characterized the military pension as community property and offset its award to the husband with an award to the wife of other properties of the community of equal or comparable value.

This does not mean that the trial court must be "blind" to the existence of actual or potential military retirement benefits. The court, in order to properly exercise its discretion and make a just and equitable distribution of the property, as it is required to do by statute,[5] must consider the parties' true economic circumstances. *In re Marriage of Dessauer, supra.* The actual or anticipated receipt of military retirement benefits is as much of a factor in gauging the true economic circumstances of the parties as is the potential earning power of either party taking into account the training, skill, background, and resources available. Furthermore, such consideration does not injure any federal objectives.[6]

We reverse the trial court's judgment dividing and apportioning the property. Since the original trial judge has retired, we remand to the superior court for a new trial to

---

[5]RCW 26.09.080 states:

"Disposition of property and liabilities—Factors. In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

"(1) The nature and extent of the community property;

"(2) The nature and extent of the separate property;

"(3) The duration of the marriage; and

"(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children."

[6]Courts may also consider a military pension for purposes of establishing a maintenance decree. Significantly, military retired pay may be subject to garnishment for purposes of enforcing such decree. *McCarty v. McCarty*, 453 U.S. at 235–36.

determine an appropriate and equitable division of the property; provisions for maintenance and/or alimony; and awards for costs and attorney fees as may be appropriate and consistent with this opinion and the guidelines of *In re Marriage of Dessauer, supra.*

REED, C.J., and PETRIE, J., concur.