[No. 4997-0-II.   Division Two.   March 14, 1983.]

*In the Matter of the Marriage of* DELL ROARK, *Appellant, and* BEVERLY J. ROARK, *Respondent.*

*M. H. Hemmen,* for appellant.

*Rex Behrhorst* and *Ronald Richards,* for respondent.

REED, J.—Dell Roark appeals the property division and the award of maintenance to his wife in a decree of dissolution. His assignments of error raise the following issues: (1) whether the trial court improperly considered his retirement benefits and severance allowance from the railroad in its distribution of the property; (2) whether the trial court undervalued various community assets awarded to his wife; and (3) whether the trial court abused its discretion by awarding spousal maintenance to his wife. We find no reversible error and affirm the trial court in all respects.

Dell and Beverly Roark were married in May 1952. The marriage was dissolved in August 1980. At the time of dissolution Mr. Roark had just been laid off by the Milwaukee Railroad because of reorganization of its lines. He was, however, entitled to severance pay of $25,000 and retirement benefits of over $600 per month upon reaching retirement. Except for a slight hearing loss, he was in good health and his future employment prospects were favorable.

Mrs. Roark, on the other hand, had annual earnings of only $8,374 with no likelihood of a substantial increase in the near future. Moreover, she had previously undergone an operation for cancer and was under observation for a possible recurrence.

Prior to trial the court denied Mr. Roark's motion in limine to exclude any evidence regarding the value of his retirement benefits from the Milwaukee Railroad. The court indicated that although these benefits could not be divided, they could be considered in determining the relative economic circumstances of the parties at the time of dissolution. The court ultimately awarded Mr. Roark

$29,750 worth of community property. This award included the $25,000 of severance pay he was entitled to receive from the railroad. Mrs. Roark received community assets valued at $49,600, including the family home and a 1976 Saab automobile, as well as a maintenance award of $300 per month for a period of 4 years.

In his initial assignment of error Mr. Roark contends that the trial court abused its discretion by considering his railroad retirement benefits as an economic circumstance of the parties in apportioning the community assets. He cites *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979) and *In re Marriage of Larango,* 93 Wn.2d 460, 610 P.2d 907 (1980) for the proposition that railroad retirement income cannot be considered by a trial court in any manner whatsoever in a dissolution action.

Mr. Roark's reliance on *Hisquierdo* and *Larango* is misplaced. These cases held that certain provisions of the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231 *et seq.* conflict with state community property principles and prohibit the division of railroad retirement benefits in a dissolution action. *Hisquierdo v. Hisquierdo, supra; In re Marriage of Larango, supra.*[1] However, the Washington Supreme Court has subsequently indicated that these cases did not specifically address the issue of whether railroad retirement benefits can properly be considered as one of the economic circumstances of the parties in making an equitable distribution of the community assets. *In re Marriage of Dessauer,* 97 Wn.2d 831, 650 P.2d 1099 (1982).[2]

---

[1]The *Hisquierdo* Court placed particular emphasis on the antiattachment and antianticipation provisions contained in section 14 of the act. 45 U.S.C. § 231M (1976). The Court concluded that these provisions mandated that railroad retirement benefits actually be received by the retiring employee and were therefore inconsistent with state community property principles authorizing the division of such benefits in a dissolution action. *Hisquierdo v. Hisquierdo,* 439 U.S. at 584.

[2]In *Dessauer,* the court stated that although the holding in *Larango* appeared to contain language to the contrary, that decision did not decide the question of whether railroad retirement benefits can properly be considered by a trial court in making an equitable division of the community property. *See In re Marriage of*

This issue has been confronted and resolved in the area of military retirement benefits. In *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), the United States Supreme Court concluded that federal statutes governing military retirement benefits were sufficiently analogous to the Railroad Retirement Act to prohibit the division of such benefits in a dissolution action.[3] Nevertheless, the Washington State Supreme Court subsequently ruled that these statutes do not prohibit a trial court from considering the actual or anticipated receipt of military retirement income as one of the economic circumstances of the parties when making an equitable distribution of the other community assets. *In re Marriage of Dessauer*, 97 Wn.2d at 838. In view of the judicially recognized similarities between the military retirement legislation and the Railroad Retirement Act, we believe the *Dessauer* holding is equally applicable in the context of railroad retirement income. Accordingly, we hold that the railroad retirement benefits involved in the instant case were appropriately considered as an economic circumstance of the parties at the time of dissolution.

■ Mr. Roark next contends that the trial court improperly characterized his severance allowance from the Milwaukee Railroad as a presently available community asset. He maintains that he had to remain unemployed to

---

*Dessauer,* 97 Wn.2d at 837. In view of the fact that the *Larango* decision was based entirely on *Hisquierdo,* the foregoing statement by the *Dessauer* court clearly suggests that the holding in *Hisquierdo* also failed to resolve the question of whether railroad retirement benefits are properly considered as one of the economic circumstances of the parties at the time of dissolution.

[3]The *McCarty* Court concluded that 37 U.S.C. § 701(c) and (a), which prohibited an enlisted serviceman from assigning his pay and allowed a commissioned officer to assign his pay only when "due and payable," were analogous to the antiattachment and antianticipation provisions of the Railroad Retirement Act. *McCarty v. McCarty,* 453 U.S. at 228 n.22. Additionally, the Court found that several features of the statutory scheme governing military retirement pay evidenced a legislative intent to make such pay a "personal entitlement" of the military member, and thus not subject to community property division. *McCarty v. McCarty,* 453 U.S. at 224.

receive this allowance and that it was too speculative to be included in the property distribution. This argument is not well taken. The record contains testimony by Mrs. Roark that her husband was entitled to the separation benefits without regard to future employment. Although disputed, this testimony was sufficient to support the court's finding that the severance pay was available for distribution in the property division.[4]

In his next assignment of error Mr. Roark contends that the trial court undervalued the family residence and the 1976 Saab automobile which were awarded to his wife in the property distribution. We disagree. Evidence presented at trial indicated that the family home had a net value of between $37,000 and $60,000. This evidence clearly supported the trial court's valuation of the residence at $48,000. The testimony at trial regarding the value of the Saab was equivocal. At one point Mr. Roark stated that he believed the vehicle had a value of $4,675. He subsequently testified, however, that the car was so old that it no longer had an actual blue book value. Mrs. Roark "guessed" that the Saab was worth approximately $3,000. She also stated that the vehicle was running poorly and needed at least $400 worth of repair work. In view of the inconclusive nature of this testimony, we are unable to conclude that the trial court's valuation of the vehicle at $1,600 was impermissibly low. Moreover, any error in this regard would be insignificant in terms of the overall property division.

In his final assignment of error Mr. Roark maintains that the trial court abused its discretion by awarding his wife spousal maintenance of $300 per month for a period of

---

[4]The actual labor agreement governing the payment of the separation allowance was not submitted as evidence. Therefore, the only evidence before the trial court concerning Mr. Roark's entitlement to the separation allowance was the conflicting testimony of the parties. Under those circumstances, the trial court's findings that Mr. Roark would receive the separation allowance regardless of his future employment situation was based on substantial, albeit disputed, evidence and will not be disturbed on review. *See North Pac. Plywood, Inc. v. Access Road Builders, Inc.*, 29 Wn. App. 228, 628 P.2d 482 (1981).

4 years. This argument is also unfounded. RCW 26.09.090 sets forth the factors to be considered by a trial court in determining the propriety of a maintenance award. These factors include the financial resources, health and education of the respective parties, the duration of the marriage and the standard of living established therein. The record in the instant case reveals that the trial court's decision to grant the maintenance award to Mrs. Roark was based on a careful consideration of each of the foregoing factors. Consequently, its ruling did not constitute an abuse of discretion and will not be disturbed on appeal. *In re Marriage of Nicholson,* 17 Wn. App. 110, 561 P.2d 1116 (1977).

We affirm.

PETRICH, C.J., and WORSWICK, J., concur.